MARGARETHA BENTE, APPELLANT, v. NEWTON A. K. BUGBEE, COMPTROLLER, ETC., RESPONDENT.

Argued February 9, 1927—Decided May 16, 1927.

Appellant, at the request of one S., now deceased, agreed to take him into her home and to provide him with board, lodging, care, &c., in consideration of a legacy of $15,000 to appellant, to be contained in his will. Appellant performed her part of the agreement for two and one-half years, when S. died leaving a will which had contained the legacy but from which it had been exscinded. She made claim on the estate, which was enforced by a suit at law resulting in a judgment in her favor for the amount named. *Held*, under the Succession Tax act, that this recovery was not a transfer by will, or by the intestate laws, and not being within any other provision of the statute, was not taxable thereunder.

---

On appeal from the Supreme Court, whose *per curiam* is printed in 4 *N. J. Mis. R.* 701.

For the appellant, *J. Emil Walscheid.*

For the respondent, *Edward L. Katzenbach,* attorney-general.

The opinion of the court was delivered by

Parker, J.    The question for decision is whether under the language or the plain intendment of the Succession Tax act of this state as it now stands on the statute books (*Pamph. L.* 1922, *p.* 293, amending *Pamph. L.* 1909, *p.* 325; *Comp. Stat., p.* 5301, *et seq.*), a judgment for debt or damages based upon breach of a contract to bequeath a specified amount by will supported by valuable consideration—or the money recovered by such judgment—is subject to succession tax.

The facts are stated with substantial accuracy in the *per curiam* of the Supreme Court, and need not be repeated here at length.    It may be noted that the suggestion that Steinberg, the deceased, should compensate the appellant, Mrs. Bente, by a legacy of $15,000, seems to have been at his suggestion and not hers; and that all changes in the household and living quarters were apparently satisfactory to him, so that there was no failure of consideration.    She and her husband were to furnish him a home for the rest of his life and to take their pay in legacies of $15,000 each; they did furnish him a home to all intents and purposes, and the fact that he died after two years and a half in no way impairs the consideration; he might well have lived for twenty years. We need not dwell on this, for the validity of the contract and its breach and the right to recover therefor are *res judicata,* as the appellant filed her claim with the executor, it was rejected, she sued on it and had judgment.

Nor is the precise form of the breach material.    As a matter of fact, Steinberg did make a will and include the agreed legacies therein, and before his death erased them, and thereby revoked them by a lawful method.    *Frothingham's Will,* 76 *N. J. Eq.* 331; *Hilyard* v. *Wood,* 71 *Id.* 214, and cases cited.    He might have destroyed the will; or made a new one superseding it and omitting the legacies; or revoked the legacies by codicil; or failed to make any will at all. In any of those cases the result would have been legally the same so far as appellant's rights were concerned, viz., a breach by non-performance of the promise, creating a right of action at law to recover what may properly be called the contract

price, due because of the contract itself and its performance by the appellant, Mrs. Bente. *Smith* v. *Smith,* 28 *N. J. L.* 208; *Updike* v. *Ten Broeck,* 32 *Id.* 105, 117; *Van Houten* v. *Van Houten,* 89 *Id.* 301 (a promise to bequeath a specified amount). *Grandin* v. *Reading,* 10 *N. J. Eq.* 370 (accounting). In some cases the agreement being to devise land and the statute of frauds standing in the way, recovery was had on a *quantum meruit* for the value of the services. *Updike* v. *Ten Broeck, supra; Gay* v. *Mooney,* 67 *N. J. L.* 27, in which the late Mr. Justice Dixon, speaking for the Supreme Court, said that the bargain, though specifically unenforceable on account of the statute of frauds, "affords the means of determining that the service was not a gift, but a sale, and out of that determination the law deduces a right in him who sold the service to be paid its value by him who bought it." In other cases the promise was generally to compensate by a legacy without specifying property or amount; and, again, recovery was had on a *quantum meruit* for the value of the service. *Cullen* v. *Woolverton,* 65 *Id.* 279, 284; *Stone* v. *Todd,* 49 *Id.* 274, perhaps the leading case on this subject, cited repeatedly in this court, wherein (at *p.* 281), Mr. Justice Scudder, speaking for the Supreme Court, said: "If it was their understanding that she should be paid, the intended will was but the method of *paying an existing and admitted obligation* to compensate for the services rendered, and if he failed to pay in the manner indicated, the plaintiff is entitled to recover, as a creditor, for the value of her services."

The Supreme Court has even held that where there is an express agreement to "pay" for services by a legacy, and there is a legacy but it is inadequate in amount, the legatee may reject the legacy and sue on a *quantum meruit. Schmetzer* v. *Broegler,* 92 *N. J. L.* 88, 92. That question is not present in the case at bar, but the decision is cited as in the line of cases holding that the performance of services under a contract to compensate generally by legacy entitles the party to an action at law as for a debt or damages. This line of cases suggests the question, very relevant to the present inquiry, whether in case of an unperformed general promise to com-

pensate by will for services rendered, &c., without specifying any amount, a tax should accrue on such an amount as a jury determines by way of *quantum meruit.*

Bearing in mind the nature of the appellant's claim—a claim in debt for contract price, or for damages because of failure to pay it—we turn to the statute in order to ascertain whether such a claim is made taxable. The only clause invoked is that designated as—"first" in section 1 of the statute. *Pamph. L.* 1922, *p.* 294. It imposes a tax: "First, when the transfer is by will or by the intestate laws of this state from any person dying seized or possessed of the property while a resident of the state." And the crux of that clause is, "When the transfer is (*a*) by will or (*b*) by the intestate laws."

It must be perfectly obvious that general debts are not taxable; in fact, they are deducted under the express provisions of the act. So, if Steinberg had promised to pay at a stated date, or even to pay generally, or had given a note at one year, or on demand, or even payable at his death or at a stated time thereafter (*Rand. Com. Pap.,* § 113; 8 *C. J.* 136), it cannot be conceived that a tax would accrue under the statute. The interesting case of *Wood* v. *Chelwood,* 44 *N. J. Eq.* 64, affirmed in this court, 45 *Id.* 369, dealt with a paper of this general character.

There is no distinction between such cases as those just mentioned, and the case *sub judice,* except that in the latter the deceased agreed to pay the contract price by a provision in his will, and failed to do so by will or in any other way. Admittedly, such a case is not within the language of the statute. As we understand the opinion of the Supreme Court, it was held within the legislative intendment, apparently on the equitable theory of regarding that as done which ought to have been done. That maxim is applicable in favor of a party to the original transaction who would be benefited by its application (*Goodell* v. *Monroe,* 87 *N. J. Eq.* 328); but it is a novel application of it to invoke its operation in favor of a state tax. Moreover, there is no equity involved in this case. A tax is a legal imposition exclusively of statutory origin (37 *Cyc.* 724, 725), and, naturally, liability to

taxation must be read in the statute, or it does not exist.   The prototype of the present act as enacted in 1892 (*Pamph. L., p.* 206) *and* 1893 (*Pamph. L., p.* 367) did not include the word "devises" in its title, and was held ineffective, on constitutional grounds, as a tax on devises.   *Grossman* v. *Hancock,* 58 *N. J. L.* 139.   Accordingly, the title was amended in 1894.   *Pamph. L., p.* 318.   That was a case of insufficiency of title; the present is a case of insufficiency both of body and title ("an act to tax the transfer of property   *   *   * by devise, bequest," &c.).

The question before us is *res nova* in this state.   Outside this state there is only one decision to which we care to advert as at all in point, viz., *In re Kidd,* 188 *N. Y.* 274;   80 *N. E. Rep.* 924.   There was a promise in that case to leave all the estate, real and personal, to a step-daughter on a certain contingency, which occurred.   The will was silent, and there was a suit in equity for specific performance and a decree for complainant.   The New York court laid hold of the equitable rule that the representatives and beneficiaries under the will were converted into trustees for the beneficiary under the contract, and, in effect, reframed the will to read as it should have read in order to carry out the promise, and taxed this imaginary devise accordingly.   In most, if not all, of the other cases cited, there was an actual devise or bequest in performance of the promise, so that the case fell within the language of the statute and the attempt was to escape the act on the theory that the testamentary provision was not donative in character.   *E. G. Richardson* v. *Lane,* 234 *Mass.* 403;   126 *N. E. Rep.* 44;   *Clarke* v. *Treasurer,* 226 *Id.* 301;   115 *Id.* 416;   *Carter* v. *Craig,* 77 *N. H.* 200;   90 *Atl. Rep.* 598;   *In re Gould,* 156 *N. Y.* 423;   51 *N. E. Rep.* 287;   *Grogan's Estate,* 63 *Cal. App.* 536;   219 *Pac. Rep.* 87.   The following extract from which seems to negative the right to tax in the absence of a testamentary provision:

"The statute here does not provide for a tax because some one has a right arising out of a debt or otherwise, but only when a transfer of property is brought about by means of a will is a tax imposed.   It is a tax upon the vehicle carrying the right, rather than a tax upon the right itself.   It is in

effect a declaration of law that when a will is used as a means of conveyance of property, a tax must be paid for that privilege."

We are not concerned at this time with the question whether, if Steinberg's will had contained in unimpaired form the bequest in fulfillment of his contract, that bequest would be taxable. The cases just cited so hold; but that point is not before us. What is before us is a repudiated promise, and a recovery, not in equity, but at law, on account thereof.

The Supreme Court in its *per curiam,* in this case, cites no authority for the views expressed by it; but the thoughts that "the effect of the judgments was merely to restore the status as it would have been had the erasures * * * not been made;" and that "the effect of the judgments was not to set aside the will, but to convert those who would receive, by reason of the erasures, the bequests originally intended for the Bentes into trustees for the Bentes to the extent of such bequests" seem to indicate a reliance on the Kidd case, *ubi supra.* We are frank to say that we do not agree in this line of reasoning; for it results in treating a broken promise for taxing purposes as one that was kept; in viewing a will not as it is, but as it ought to have been, in reading into a will something that is not there, and to crown all, in reading language into a tax act which even the liberal interpretation accorded to such acts by our courts should not countenance.

It is suggested for the respondent that if there had been actually a legacy it would have been taxable, and that in a suit based on the absence of a legacy the recovery should be only for the amount of legacy less tax. No such question is before us. Assuming, for the purpose of argument, that a legacy in payment of a debt would be taxable, the question suggested would arise in the suit at law in reduction of the amount of recovery.

Viewing the case as it stands, viz., an attempt to tax a recovery at law of a debt or damages for failure to carry out a valid contract to bequeath a specific sum, we are clear that neither by the language nor the fair intendment of the statute is the recovery at law taxable. The judgment of the Supreme

Court is therefore reversed and the tax set aside. *Hoxsey* v. *Paterson,* 39 *N. J. L.* 489; *Levy* v. *Elizabeth,* 81 *Id.* 643.

BLACK, J. (dissenting). The reasoning, in the prevailing opinion in this case, on which a reversal of the judgment in the Supreme Court is ordered, is based, as it seems to me, on an assumed and false premise, viz., "a judgment for debt or damages based upon breach of a contract to bequeath a specified amount by will." I deny the premise is founded either in point of fact or in point of law. The testimony returned shows: "Yes, sir, he told me if I would give up my position and give him a home for the rest of his life, he would leave me $15,000." "*Q.* By his will? *A.* Yes, sir." I think the better and sounder view is that expressed by the Supreme Court, viz.: "The obtaining of judgments was a method of procedure to establish the contents of the will as originally drafted. The effect of the judgments was to restore the original provisions of the will. Under the will the bequests were taxable. They fall within the provisions of the title and body of the act as property transferred by bequest." It is essentially a recovery of a legacy. The transfer of the property was to take effect by will and not by the promise. Judge Dear requests me to add that he is in accord with the above views.

*For affirmance*—BLACK, DEAR, JJ.    2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, KALISCH, CAMPBELL, VAN BUSKIRK, KAYS, HETFIELD, JJ. 8.