RIMM, J.T.C.
This local property tax matter was filed with the Tax Court as a direct appeal under N.J.S.A. 54:3-21. It is now before the court on the municipality’s motion to dismiss the taxpayer’s complaint for failure to comply with N.J.S.A. 54:4-34 which requires a taxpayer to supply income information to a local property tax assessor upon request. The provisions of the statute imposing such requirement and prescribing the results of noncompliance with such request are as follows:
Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, ... and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, ... the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fail value thereof. No appeal shall be heard from the assessor’s valuation and assessment with respect *471 to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request.
The affidavit of the assessor, filed with the notice of motion, states that he sent a request to the plaintiff by certified mail on March 21, 1980, pursuant to the statutory provision, requesting an income and expense statement for the year 1979. He received no reply to his request. The assessor’s affidavit is uncontroverted since no answering affidavit was filed by plaintiff. In its brief and during oral argument, the taxpayer conceded that it did not respond to the assessor’s request. No explanation was given for the failure to respond to the request. Instead, the taxpayer argues that the statute is only an aid in discovery and should be treated as a discovery rule.
Our statutes mandate that:
The assessor shall .. . after examination and inquiry, determine the full and fair value of each parcel of real property situate in the taxing district. . , . [N.J.S.A. 54:4-23; emphasis supplied]
The statutes provide that the assessor, in performing his duties, shall follow forms and methods prescribed by the Director, Division of Taxation. N.J.S.A. 54:4-26. The Director has promulgated the Real Property Appraisal Manual for New Jersey Assessors for use by local property tax assessors. The Manual recognizes the need for income information in the income approach to value and states:
Where actual income statements are available for the current and past three or four years, the estimate of future gross income becomes easier.... The operating expenses and fixed charges are subtracted from the effective gross income to arrive at the net income from the property. [Id. at 1-120; emphasis supplied]
Since the assessment for the tax year 1981 was to be made as of October 1, 1980, N.J.S.A. 54:4-35, it was entirely reasonable for the assessor to request income and expense information for 1979, the last full calendar year before the assessing date. Making the request on March 21, 1980 was also reasonable. It was made, allowing 45 days for response, in time to permit the assessor to use the information in the preparation of the assessment as of October 1, 1980. The purpose of N.J.S.A. 54:4-34 is to assist the assessor, in the first instance, to make the assess *472 ment and thereby hopefully to avoid unnecessary expense, time and effort in litigation.
The court finds that the assessor was in compliance with the statute and that the taxpayer made no response to the assessor’s request made in the course of his carrying out his statutory responsibilities. The appeal to the Tax Court should not be heard, and the complaint is dismissed.
While there is a reluctance to dismiss a case on technicalities, the statute before the court does not involve a mere procedural matter. It goes to the very substance of assessing practices. By insuring to the assessor income information from the best available source, it seeks to relieve both the taxpayer and the taxing district of the time and expense of an adversary proceedings to review an assessment either in the county board of taxation or the Tax Court.
The statute is clearly mandatory: no appeal shall be heard. In Devonshire Develop. Assoc. v. Hackensack City, 184 N.J.Super. 371, 2 N.J.Tax 392, 406, 446 A.2d 201 (Tax Ct.1981), the court said:
The word “shall” is not conclusive that an enactment’s purpose is mandatory, but if a public right of public benefit ensues from such a construction, then the provision is mandatory. Franklin Estates, Inc. v. Edison, 142 N.J.Super. 179, 361 A.2d 53 (App.Div.1976), aff’d 73 N.J. 462, 375 A.2d 658 (1977). Stated differently, such a mandatory construction is warranted where the essential spirit, e.g., the underlying purpose, of the enactment is served. Durgin v. Brown, 37 N.J. 189, 180 A.2d 136 (1962). Accordingly, this court holds that the above-mentioned provisions are mandatory, especially in view of the principle that “Where the legislature has comprehensively addressed an area of the law, it must be assumed that it meant what it wrote since, in construing a tax statute, significance must be ascribed to clearly intelligible and declaratory words of the statute and it must be assumed that they were used purposely. [Wilentz v. Hendrickson, 133 N.J.Eq. 447, 33 A.2d 366 (Ch.1943) aff’d 135 N.J.Eq. 244, 38 A.2d 199 (E. & A. 1944)].”
The public policy of having the assessor make his assessments by providing him with information from the best available source is a completely salutary policy. The Legislature has indicated the method for collecting the information and has prescribed the results of taxpayer’s failure or refusal to adhere to the method. The taxpayer would have this court ignore the clear mandate of the Legislature. This court will not do that.
*473 Our courts recognize that “enforcing the collection of municipal taxes” involves an area “of special legislative concern,” and judicial deference ought to be paid to the Legislature’s expression of public policy in the area. New Shrewsbury v. Block 115, Lot 4, 74 N.J.Super. 1 [180 A.2d 387] (App.Div.1962). [Garden State Racing Ass’n v. Cherry Hill Tp., 1 N.J.Tax 569, 576 (1980) ]
The most recent reported case dealing with the statute is Application for Awarding of Process of Subpoena Pursuant to N.J.S.A. 54:4-34, 21 N.J.Misc. 164, 32 A.2d 509 (Cir.Ct.1943). That case dealt with the statute in its form following the enactment of L.1918, c. 236, § 403, when the statute directed the assessor to estimate the property “at the highest value he has reason to suppose it may be placed” on the failure of the taxpayer to supply true information when requested to do so. The court denied the application for a subpoena, but said that, for the taxpayer’s failure to supply data requested by the assessor, “the remedy is to assess the property at the highest value the assessor has reason to suppose it may be placed.” The court cited State v. Taylor, Collector of Paterson, 35 N.J.L. 184 (Sup.Ct.1871), and said:
It is an established rule of construction regarding tax laws that a liberal construction must be given to all tax laws for public purposes not only that the officers of government may not be hindered, but also that the rights of all taxpayers may be equally preserved; State v. Taylor, Collector of Paterson, 35 N.J.L. 184. [21 N.J.Misc. at 167; 32 A.2d at 511]
The court pointed out the nature of the control of the Legislature over taxation. See New Shrewsbury Bor. v. Block 115, Lot 4, supra. It cited Bente v. Bugbee, 103 N.J.L. 608, 137 A. 552 (E. & A. 1927), and also said:
It should be borne in mind also a “Tax” is a legal imposition, exclusively of statutory origin; Bente v. Bugbee, 103 Id. 608; 137 Atl.Rep. 554, and so are the remedies attendant thereto. [21 N.J.Misc. at 167; 32 A.2d at 511]
In dealing with earlier predecessor statutes, the courts extended the statutes and precluded appeals from assessments in the event of failure to supply information even though no such proscription was actually in the statutes. See State, Sharp, Pros’r, v. Apgar, 31 N.J.L. 358 (Sup.Ct.1865).
N.J.S.A. 54:4-34 also provides:
The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good *474 cause shown, could not furnish the information within the required period of time.
If, upon application to the county board after failing to respond to an assessor’s request under the statute, the taxpayer can show good cause for not furnishing the information within the required time, the county board may impose terms and conditions for furnishing the information. In this way a taxpayer may be relieved from the dictate of the statute that “no appeal shall be heard.”
The present statute was effective May 16, 1979. L.1979, c. 91, § 1. At that time there was no direct appeal procedure by which assessments could be reviewed without the county board. Now, when an assessment exceeds $750,000 and the Tax Court would have subject matter jurisdiction under the direct appeal provisions of N.J.S.A. 54:3-21, the provisions of N.J.S.A. 2A:3A-4 a that the Tax Court may grant legal and equitable relief clearly give the court jurisdiction to deal with a taxpayer who, for good cause shown, could not furnish the requested information within the required time. On application to the Tax Court, it could assure that the assessor would have the required information before the assessment date, thereby possibly obviating protracted litigation and unnecessary expense on the part of the municipality. There was no such application to the court. Indeed there could not have been. There was no explanation given in the present proceedings for the taxpayer’s failure to respond to the assessor’s request. The court finds that the taxpayer simply ignored the request and failed and refused to comply with a legal and reasonable request. There was no reason for the taxpayer’s failure to supply the requested information.
Refusals on the part of the taxpayers to cooperate with local property assessors cannot be tolerated by this court. Legitimate requests for information by assessors to prepare assessments are actions which should be encouraged by this court. Taxpayers frequently complain of local property tax assessors and their work. Here the taxpayer had an opportunity to supply to the assessor information pertinent to the assessor’s work. It failed *475 and refused to do so without any explanation, and its attitude in failing to even respond to the assessor’s legitimate statutory request is inexcusable.